PeausoN, J.
 

 If the fight was a continuous act, from its commencement at the house, until the fatal blow was struck in the orchard, although the throwing of stones and other offensive acts was not kept up incessantly, but was suspended at times, as the parties saw proper to change their position or seek other weapons, the killing was but manslaughter: because the assault with the axe and maul, and by throwing of stones, was not only a legal provocation on both sides, but was a provocation of a highly exciting character, by which the lives of the parties were mutually put in danger, and each was impelled, by blind fury, to kill his adversary, if he could.
 

 If the first fight ended at the stable, so that the matter was over and done with, and there was 6- cooling time” before the parties met in the orchard, and the prisoner then struck the fatal blow, the killing was murder, unless there was some fresh provocation.
 

 Considering all the occurrences as constituting but one act, the dying declarations were all properly admitted as evidence, being a full narration of the whole fight; ■ but then, the Judge should have instructed the jury, that in this point of view, the killing was manslaughter only.
 

 Considering the occurrences as constituting two separate, and distinct acts, only so much of the dying declarations as related to the second act, ought to have been admitted, and there was error in admitting that part of the declarations which
 
 *364
 
 related to the first fight. In this point of view, the Judge ought to have withdrawn from the j ury all the declarations, except that part which related what took place in the orchard when the fatal blow was struck. The better course would have been to require the Solicitor for the State, to set out what he expected to prove the dying declarations were; and as from them it is manifest that the first fight and the rencounter in which the fatal blow was given, were too separate and distinct acts, he should only have allowed that part which related to the last act, to go to the jury.
 

 According to the general rule, no testimony is admissible unless it is subjected to two “ tests of truth,” an oath and a cross-examination. A sense of impending death is as strong a guaranty of truth as the solemnity of an oath; but dying declarations cannot be subjected to the other test: there is no opportunity for cross-examination, and there is nothing to meet this objection and answer as an equivalent for the want of cross-.examination : hence, the exception, in respect to dying declarations, rests solely upon the ground of public policy and the principle of necessity. As in many cases, the knowledge of the facts attending the killing, is confined to the party killed and the perpetrator of the crime, there is a public necessity for admitting dying declaration as evidence, “ in order to preserve life by bringing manslayers to justice but, as the exception can only be sustained on the ground of necessity, it is restricted to cases of indictment for homicide, and it is further restricted to the act of killing and the circumstances immediately attending the' act and forming- a part of the
 
 res gestee.
 
 If it can be extended to a separate and distinct act, occurring half an hour before, it will extend to any act done the day before, or a week, month, or year. As soon as the limit fix«d by absolute necessity is passed, the principle upon which the exception is based being exceeded, there is no longer any limit whatever, and dying declarations become admissible, not merely to prove the act of killing, but to make every homicide murder by proof of some old grudge.
 

 That the exception is restricted in the manner above stated,
 
 *365
 
 is clear from the reason of the thing, and is settled by authority;
 
 Barfield
 
 v.
 
 Britt,
 
 (ante 41) 1 Greenleaf, sec. 156, and cases cited. Cowan and Hill’s notes, Phil. on Ev. Pt. 1, 610.
 

 The prisoner excepted on other grounds: several of them, we are inclined to think, are well founded, but it is not neces.sary to notice them, as they may be prevented in the next trial.
 

 Per Oueiam. Judgment reversed and a
 
 venire de novo.