## STATE v. ANDY ORR AND ROBERT GRANT.

(Filed 22 December, 1917.)

**1. Homicide—Murder—Manslaughter—Deadly Weapon—Malice—Presumptions—Conspiracy—Arrest—Officer—Evidence—Questions for Jury.**

The two defendants, a special policeman and his friend, were tried for murder in the second degree, upon agreement with the solicitor, with evi-

dence tending to show that the officer ran after the deceased after being struck by him, calling on the bystanders, especially his friend, to help in the arrest; that he caught the deceased and upon request of his friend to turn him loose, turned so as to expose the deceased to the pistol · his friend had drawn on him, who then fired the fatal shot: *Held,* some evidence to be considered with other facts of a conspiracy to kill, and the law presuming malice from the use of the deadly weapon, other evidence was at least sufficient to sustain a verdict of manslaughter against the officer, and murder in the second degree for his coconspirator; and *Held further,* that a remark made by the former to the latter that he should not have fired should only be considered by the jury in the officer's favor, and was not conclusive.

### 2. Homicide—Criminal Law—Instructions—Reasonable Doubt.

Where the charge of the court upon a trial for a homicide clearly gives the prisoner the full benefit of the doctrine of reasonable doubt, and of the presumption of innocence, construing it as a whole, it is not necessary that the judge should repeat the instruction regarding reasonable doubt as his preface to each of his other instructions upon the relevant evidence.

INDICTMENT, tried before *Adams, J.,* and a jury, at March Term, 1917 of GRAHAM. The defendants were convicted, and from the judgment appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*
*Bryson & Black and R. L. Phillips for defendants.*

WALKER, J. The defendants were indicted for the murder of Ples Birchfield. When the case was called for trial, the solicitor elected to prosecute them for murder in the second degree or manslaughter, and that course was adopted with the consent of the court. The jury convicted the defendant Andy Orr of murder in the second degree and the other defendant, Robert Grant, of manslaughter.

We see no ground upon which the defendant Andy Orr can ask for a reversal of the judgment. The assignments of error are substantially confined to the guilt of Robert Grant, and the defendant Andy Orr principally relies on his motion to nonsuit, or on the request to charge as to both of the defendants that there was no evidence that they acted in concert in killing Birchfield. A careful examination of the evidence convinces us that there was such evidence, and moreover that there was ample evidence to support the verdict in all respects.

The defendant Grant contends that he was a special police officer, and arrested or attempted to arrest Birchfield because the latter had committed a breach of the peace by assaulting him; while the State, not denying the correctness of his contention, if he was an officer and was discharging his duty as such in arresting Birchfield—contends that he

was not so acting, but that he assaulted Birchfield with another a personal motive, and that Birchfield, after striking Grant, ran away and Grant pursued him and struck him with a stick, and finally overtook him and held him within his grasp, calling upon the bystanders and especially his codefendant, who was his "pal," to help him, crying out, "Come and help me, boys, I have got him." Andy Orr came up, with his pistol in his hand, and said, "Turn him loose," whereupon Grant, who had his back towards Orr, with his body between him and Birchfield, turned his side towards Orr, thereby exposing Birchfield to Orr's fire, and the latter fired and wounded Birchfield in the shoulder, from which wound he afterwards died in the hospital.

The defendants further contended that there was not only no concert of action, or conspiracy, between them to kill or injure Birchfield, but that Grant needed help to make the arrest complete and to shield him from the attack of Birchfield, and that Orr intervened solely for this purpose, as a felony was about to be committed and the life of Grant was in serious jeopardy from the assault of Birchfield. All these contentions were fairly and exhaustively submitted to the jury, with a full explanation of the evidence and the law arising thereon—and, too, very favorably for the defendants. It is true that Grant stated to Orr, after the latter had wounded Birchfield, that he should not have done it, referring to his firing the pistol, as he had killed him; but this was left to the jury as a part of the evidence favorable to Grant, but was not conclusive of his innocent or unlawful purpose. There was evidence from which the jury could reasonably have inferred that Orr and Grant were concerting against deceased at least to do him harm.

The good faith of each of the defendants, that of Orr in entering into the affray, and that of Grant in professing to act as a peace officer, were properly submitted to the jury, but, as to neither of these last contentions on the part of the defendants, that is, as to their good faith, was there much more than a scintilla of evidence. The conduct of both tended to show that they were not acting in any lawful capacity, the one as an officer of the law and the other as a peacemaker, but, on the contrary, that both were acting together and from some bad motive, or for some unlawfu' purpose. If Grant, instead of acting as an officer of the law in arresting Birchfield, engaged in an affray with him and afterwards assisted Orr in causing his death, he is at least guilty of manslaughter, of which he was convicted.

If Orr did not intervene for the purpose of preventing the commission of a serious felony, or of assisting Grant to make the arrest, and he intentionally fired the pistol and killed Birchfield, he is guilty of murder, for he had no other lawful excuse for killing him, and in that case the law implied the necessary malice to constitute the killing a murder;

that is, in the second degree. *S. v. Worley*, 141 N. C., 764; *S. v. Roberson*, 150 N. C., 837; *S. v. Fowler*, 151 N. C., 731; *S. v. Rowe*, 155 N. C., 436. There was, therefore, no error as to Orr, the jury having undoubtedly found that he killed with a deadly weapon without any lawful excuse, provocation, or mitigating circumstances.

As to Grant, it may be further said that, professing to be acting as an officer, he pursued and beat Birchfield, and finally afforded him no protection as his prisoner, after he had caught him, but actually exposed him to the attack of his codefendant Orr, who took his life. There was other evidence of the common design of these two men not necessary to be considered. The charge of the court was unusually clear and direct, explaining the evidence and the law in every conceivable aspect of the case, and especially presenting to the jury all the contentions of the defendants most favorably for them.

Defendant Grant, in support of his contention that Orr acted independently of him in killing Birchfield and that he was not criminally responsible for Orr's act in any degree, relied upon *S. v. Greer*, 162 N. C., 640, but from an examination of that case it appears to have no application. The Court there said: "Although one may have had some difficulty with the deceased, he is not liable for a homicide committed at or about the same time by a third person who was acting independently, without any conspiracy or common design, even though the altercation brought on the fatal encounter and the third person interfered to aid him," citing, Title "Homicide," 21 Cyc., 692; Wharton on Homicide, secs. 50-51; *S. v. Kendall*, 143 N. C., 659; *S. v. Goode*, 132 N. C., 982; *S. v. Finley*, 118 N. C., 1161; *S. v. Howard*, 112 N. C., 859; *S. v. Scates*, 50 N. C., 420.

It will be observed that, according to that statement of the law, the party who committed the homicide must have acted independently of the other party, who had merely had some trouble with the deceased, and the principle is not pertinent where there is evidence of a common design, as in this case. The language of the Court is that the slayer must have acted "independently, without any conspiracy or common design, even though the altercation brought on the fatal encounter, and the third person interfered to aid him."

There was evidence of murder in the first degree as to Orr, and of murder, at least in the second degree, as to Grant, but the State mercifully declined to prosecute Orr for the highest grade of the homicide, and the jury have dealt leniently with Grant, giving him the full benefit of any doubt as to the degree of his guilt.

- The point is made that the judge did not repeat the words "beyond a reasonable doubt" in his preface to each instruction upon the evidence as to their finding thereupon, but the position is not tenable when the

charge is·viewed as a whole, which must always be done, and considered in the relation of each part to every other part of it. *Kornegay v. R. R.,* 154 N. C., 389; *S. v. Cooper,* 170 N. C., 719. He did give the defendants the full benefit of the doctrine of reasonable doubt, and of the presumption of innocence in such a way that the jury could not have misunderstood the meaning of his language, nor fail to take it as applying, throughout the charge, to each instruction when a finding was called for. A similar objection was made in *S. v. Killian,* 173 N. C., 793, where we said: "The objection to the charge is without real merit. The judge, in opening his charge, told the jury that the burden of proof was upon the ,State, and that they must be satisfied of the guilt of the prisoner beyond a reasonable doubt before they could convict him. It was not necessary that he should repeat this rule of law every time he referred to any finding from the evidence as he had sufficiently instructed them as to the burden and the quantum of proof, and this applied to his charge throughout. We should construe the charge as a whole," citing *Kornegay v. R. R., supra; McNeill v. R. R.,* 167 N. C., 396; *McCurry v. Purgason,* 170 N. C., 463.

We find no error in the record.

No error.