STATE v. WOODROW VADEN, JOHN DANIEL VADEN AND JULIUS VADEN.

(Filed 27 February, 1946.)

1. **Homicide § 25—**

Where the evidence shows an intentional killing with a deadly weapon the law implies malice, and the motion to nonsuit made by the defendant who fired the fatal shot is properly denied, the credibility and sufficiency of his evidence upon his plea of self-defense being for the determination of the jury.

2. **Homicide §§ 11, 25—Where the State's evidence supports view that defendants did not quit fight when they had opportunity, nonsuit on ground of self-defense is properly denied.**

The State's evidence tended to show an affray at a filling station engaged in by all defendants, that the fight was stopped but that thereafter defendants, three brothers, sought and found their antagonist at another filling station, that third parties induced them to shake hands and apparently settle their controversy and the brothers started to leave in their truck when one of them called the proprietor out and expressed dissatisfaction with the settlement, that their antagonist then came out of the filling station and the quarrel was renewed and he, armed with a knife, and one of defendants, armed with a blackjack, started fighting, and that while they were fighting another defendant shot from the truck, inflicting fatal injury. *Held:* The evidence supports the view that the second fight was but a continuation of the first and that the purported settlement of the controversy was not entered into in good faith, and that in reality defendants had not quit the fight, and therefore motion to nonsuit on the ground that the State's evidence established the defense of self-defense, was properly denied.

**3. Homicide §§ 2, 25—**

> Upon evidence tending to show that all of defendants acted in concert in producing the first difficulty and all engaged in the fighting, and that during the second affray, which was but a continuation of the first, one of defendants fired the fatal shot while the deceased and appealing defendant were fighting, the contention of the appealing defendant that the one who inflicted the fatal injury was acting independently, is untenable.

APPEAL by the defendants, Woodrow Vaden and John Daniel Vaden, from *Armstrong, J.,* at October Term, 1945, of ROCKINGHAM.

Criminal prosecution upon indictment charging the defendants with the murder of Carl Bullins.

The evidence tends to show that on 14 February, 1945, the deceased and Julius Vaden were at the filling station of Caleb Ray, located on the highway between Mayodan and Stoneville. Carl Bullins was sitting on the air compressor box. Julius Vaden "walked up laughing and talking. Then Carl jumped off the air compressor and they started fighting and about that time Woodrow and Daniel went out there . . . Woodrow ran up and hit him while he was fighting with Julius. They were all four gathered up together. Just a kind of general row until Caleb come and ordered them all off." Carl Bullins, the deceased, thereafter cursed John Daniel Vaden and accused him of hitting him and said: "You will remember it the longest day you live."

The defendant Julius Vaden left the filling station and went toward Mayodan. The defendants Woodrow and John Daniel Vaden did not leave. The deceased and Otis Ray left and went toward Stoneville, stopping at the filling station belonging to Wesley Ray. About fifteen minutes later, the defendant Julius Vaden returned to Caleb's filling station and asked if "That G—— d—— Carl Bullins" was there. Upon being told that the deceased had gone up the road, Julius said: "By G——, I am going up the road too," and John Daniel Vaden said: "If you are going up the road I am going with you." Whereupon Julius, John Daniel and Woodrow Vaden entered the truck owned by Julius Vaden and drove up the road. They drove past the filling station of Wesley Ray, turned around and started back toward Mayodan and stopped at the station. The deceased and Otis Ray were sitting in Wesley Ray's filling station, and the deceased was remarking that it was unfair for two of the defendants to jump on him. One of the defendants walked into the filling station and the deceased attempted to make a "dive" at him, but was restrained by Otis and Wesley Ray. The other defendants entered the filling station and the deceased and the defendants, at the suggestion of Otis and Wesley Ray, shook hands and apparently became quite friendly. One of the defendants remarked that it was time for him to leave and they all went out to the truck. While

standing at the truck, the defendant Julius called Otis Ray out and told him that he had received a dirty deal. As Otis started back to the filling station, he met the deceased going toward the truck. Otis went to the door and when he returned to the truck the deceased had his knife in his hand. Otis persuaded the deceased to put his knife in his pocket, but when the deceased put his knife in his pocket, he left the blade open. Otis again went to the door of the building, and when he looked toward the truck the next time the deceased was "going into them" with his knife open and John Daniel Vaden was swinging at the deceased with a blackjack. The blackjack slipped out of the hand of John Daniel Vaden and fell to the ground, and both the deceased and John Daniel fell to the ground, scrambling for the blackjack. John Daniel seized the big end of the blackjack and the deceased got the little end, and John Daniel jerked the blackjack out of the deceased's hand. John Daniel and the deceased started to get up and the defendant Woodrow Vaden fired from the truck, wounding the deceased, and from this wound the deceased died.

Defendants offered no evidence. Motion for judgment as of nonsuit was overruled.

The jury returned a verdict of guilty of manslaughter as to all the defendants. From the several judgments imposed, John Daniel Vaden and Woodrow Vaden appeal.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*
*P. W. Glidewell, Sr., for defendants.*

DENNY, J. The only question presented on this appeal, is whether the trial judge committed error in refusing the defendants' motion for judgment as of nonsuit. A careful consideration of all the facts and circumstances disclosed by the evidence, leads us to the conclusion that the answer must be in the negative.

The appellants are relying upon the plea of self-defense, which defense they contend is clearly established by the State's evidence. However, since there is ample evidence tending to show that the defendant Woodrow Vaden killed the deceased with a deadly weapon, the law implies malice, and the State could not be nonsuited as against him. In the case of *S. v. Johnson,* 184 N. C., 637, 113 S. E., 617, this Court said: "We could not nonsuit the State, . . . for when there is a killing with a deadly weapon, as there was in this case, the law implies malice, and it is, at least, murder in the second degree, and the burden then rests upon the prisoner to satisfy the jury of the facts and circumstances in mitigation of or excuse for the homicide, the credibility of the evidence, and its sufficiency to produce this satisfaction being for the jury to consider

and decide." *S. v. Cagle,* 209 N. C., 114, 182 S. E., 697; *S. v. Robinson,* 213 N. C., 273, 195 S. E., 824; *S. v. Mosley,* 213 N. C., 304, 195 S. E., 830; *S. v. Bright,* 215 N. C., 537, 2 S. E. (2d), 541; *S. v. Sheek,* 219 N. C., 811, 15 S. E. (2d), 282; *S. v. Beachum,* 220 N. C., 531, 17 S. E. (2d), 674; *S. v. Rivers,* 224 N. C., 419, 30·S. E. (2d), 322. The defendants' contentions, on the plea of self-defense, were fairly and exhaustively submitted to the jury with a full explanation of the evidence and the law arising thereon, and it is evident the jury gave consideration to the defendants' contentions in mitigation of the offense, since the jury returned a verdict of guilty of manslaughter as to each of the defendants. And the appellants do not contend that any error was committed in any respect in the trial below, save and except the refusal of the court to sustain their motion for judgment as of nonsuit. ·

It is further contended by the appellant, John Daniel Vaden, that although he engaged in a fight with the deceased, he did not cause his death. Therefore, he insists that if it be conceded that the evidence was sufficient to warrant its submission to the jury against Woodrow Vaden, it was insufficient as to him, and cites *S. v. Greer,* 162 N. C., 640, 78 S. E., 310, in which the Court said: "Although one may have had some difficulty with the deceased, he is not liable for a homicide committed at or about the same time by a third person who was acting independently, without any conspiracy or common design, even though the altercation brought on the fatal encounter, and the third person interfered to aid him." *S. v. Orr,* 175 N. C., 773, 94 S. E., 721.

We do not think Woodrow Vaden was acting independently so as to relieve John Daniel Vaden of any liability for the homicide. Julius Vaden, Woodrow Vaden, John Daniel Vaden and the deceased had· engaged in an affray that afternoon at Caleb Ray's filling station. By reason of their conduct they had been ordered to leave the premises. The deceased left. Julius Vaden also left, but returned in about fifteen minutes and asked for the deceased. After being informed that he had gone up the road, he said he was going up the road too. He was joined by his brothers, the appealing defendants. They were armed with a blackjack and a shotgun, and were looking for the deceased. After finding the deceased at a filling station, about a quarter of a mile from where the original fight took place, the deceased and the defendants, at the suggestion of Otis and Wesley Ray, shook hands and appeared to be friendly. The defendants thereafter started to leave and went out to the truck. Julius Vaden called Otis Ray out to the truck and expressed his dissatisfaction over the settlement and said "he had received a dirty deal." Then the deceased came out of the filling station and the quarrel was renewed. Whereupon, the deceased, armed with a knife, and John

Daniel Vaden, armed with a blackjack, engaged in a fight, and while they were fighting Woodrow Vaden shot and killed the deceased.

The evidence supports the view that the second fight was but a continuation of the first one, and that the purported settlement of the controversy was not entered into in good faith by the defendants, and in reality they had not quit the fight. 40 C. J. S., sec. 121, p. 995, and sec. 133, p. 1020; *S. v. Robinson, supra.* Moreover, the evidence is sufficient to support a finding by the jury that there was concert of action on the part of these defendants which culminated in the death of the deceased. *S. v. Orr, supra.*

In order to relieve one engaged in a difficulty with the deceased, of responsibility for his death, inflicted by a third party who acts independently, without any conspiracy or common design, even though the altercation brought on the fatal encounter, and the third party interposed to aid him, the third party must not have acted in concert with the one engaged in the difficulty with the deceased, in producing the difficulty. Woodrow Vaden and John Daniel Vaden actively participated in the first fight with the deceased. It is apparent from their conduct these defendants were not satisfied over the outcome of the first skirmish and were seeking a renewal thereof.

We think the evidence was properly submitted to the jury as to both appellants, and that the judgment of the court below must be upheld. *S. v. Orr, supra; S. v. Allison,* 200 N. C., 190, 156 S. E., 547.

In the trial below, we find

No error.