## STATE v. BOW FRANKLIN.

(Filed 15 December, 1926.)

**1. Evidence—Dying Declarations—Witnesses—Oath—Cross-Examination.**

While a witness in a criminal action is required to testify under oath and be subjected to cross-examination, dying declarations are an exception to the rule, the apprehension of death being at least of equal solemnity as an oath, and the necessity of the case excluding the cross-examination.

**2. Same—Reasonable Apprehension of Death.**

A declaration made in the expectancy of immediate death is not inadmissible because of the fact that death did not occur until three days after the declaration was made.

**3. Same—Motive.**

*Semble,* the declarations of the declarant as to the prisoner's motive in killing him are competent evidence under the facts of this case.

**4. Same—Verdict—Harmless Error—Appeal and Error.**

Where it is contended that the dying declarations included the evidence of the motive of the prisoner in inflicting on the deceased the deadly wound: *Held,* the motive is not essential to a conviction of manslaughter, and, if erroneously admitted, a verdict of manslaughter cures the error, together with the exclusion of evidence offered in rebuttal by defendant.

APPEAL by defendant from *Harward, J.,* at August Term, 1926, of BURKE. No error.

Indictment for murder. From judgment on verdict that defendant is guilty of manslaughter, defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*W. C. Newland and Spainhour & Mull for defendant.*

CONNOR, J. No exceptions were taken by defendant to the judge's charge to the jury. The only assignments of error relied upon by defendant upon his appeal to this Court, are based upon exceptions to the rulings of the court, during the progress of the trial, resulting in the

admission or exclusion of evidence. These assignments cannot be sustained. We find no error, for which defendant is entitled to a new trial.

Witnesses for the State were permitted to testify, over objections aptly made by defendant, as to declarations made to each of them, by deceased, after he received his fatal wounds, and shortly before his death. The court found upon sufficient evidence that at the time deceased made each of these declarations he had an impending sense of his approaching death from the wounds with which he was then suffering. The testimony was competent, and was properly admitted as evidence. *S. v. Watkins,* 159 N. C., 480. Evidence of dying declarations does not depend for its competency upon a declaration by the deceased, at the time, that he was dying; for it may be shown by the attending circumstances that he was in actual danger of death, which ensued, with full apprehension of his danger. Such evidence is admissible under an exception to the rule excluding testimony which is "hearsay." The law dispenses with the sanction of an oath when the declaration is made by one who is conscious of approaching death, which thereafter ensues; it holds such declarations competent. It is an exception to the rule which requires that defendant shall have an opportunity to cross-examine witnesses whose testimony is offered as evidence against him, because of necessity. The declaration of the deceased is submitted to the jury only as evidence; its credibility and probative force is to be determined by the jury under the rules which are applicable to testimony given under oath, and subject to cross-examination.

In the instant case, at the time deceased made the declarations offered as evidence, he had been shot in the abdomen and was suffering intense pain. One of the declarations was made to a neighbor who came to his home immediately upon learning that deceased had been shot; another was made to the physician and surgeon at the hospital to which deceased was taken for an operation, and just before the operation was performed; and the other was made to a brother of deceased, on Monday morning after deceased had been fatally wounded on the preceding Sunday afternoon. Deceased said to each of these witnesses that he was "killed." Defendant's counsel did not cross-examine either of the witnesses in order to determine the competency of the testimony. There was no error in the ruling that the testimony was competent upon the evidence offered by the State. *S. v. Brinkley,* 183 N. C., 720; *S. v. Alexander,* 179 N. C., 759; *S. v. Cain,* 178 N. C., 724; *S. v. Williams,* 168 N. C., 191; *S. v. Watkins,* 159 N. C., 480; *S. v. Laughter,* 159 N. C., 488; *S. v. Finley,* 118 N. C., 1161; *S. v. Caldwell,* 115 N. C., 794; *S. v. Whitt,* 113 N. C., 716; *S. v. Whitson,* 111 N. C., 695; *S. v. Williams,* 67 N. C., 12.

All of these declarations were to the effect that deceased was shot by defendant, Bow Franklin and Ernest Barrier, who was on trial with defendant, but who was acquitted by the jury. There was ample evidence submitted to the jury, without objection, that defendant fired at deceased with his pistol, and inflicted the fatal wounds. Defendant, testifying as a witness in his own behalf, admitted that he shot deceased. He testified also that deceased had first fired at him; he contended that he shot in self-defense. The doctor testified that deceased told him that the trouble arose out of an old grudge. Defendant moved the court to strike out this testimony. The motion was denied, and defendant excepted.

*Judge Pearson,* in *S. v. Shelton,* 47 N. C., 360, says:

"According to the general rule, no testimony is admissible unless it is subject to two 'tests of truth,' an oath and a cross-examination. A sense of impending death is as strong a guaranty of truth, as the solemnity of an oath; but dying declarations cannot be subjected to the other test; there is no opportunity for cross-examination, and there is nothing to meet this objection and answer as an equivalent for the want of cross-examination; hence the exception in respect to dying declarations rests solely upon the ground of public policy and the principle of necessity. As in many cases the knowledge of the facts attending the killing is confined to the party killed and the perpetrator of the crime, there is a public necessity for admitting dying declarations as evidence in order to preserve life by bringing manslayers to justice; but as the exception can only be sustained on the ground of necessity, it is restricted to cases of indictment for homicide, (see, however, ch. 29, Pub. Laws 1919, C. S., 160, *Williams v. R. R.,* 182 N. C., 267), and it is further restricted to the act of killing and the circumstances immediately attending the act and forming a part of the *res gestæ.*"

Upon an application of this principle to an exception by the defendant in that case, the admission of a declaration by the deceased as to an occurrence immediately prior to the act of killing was held to be error, and a new trial was granted. In *S. v. Williams,* 67 N. C., 13, and in *S. v. Jefferson,* 125 N. C., 715, it was held to be error to admit as evidence a dying declaration in which the deceased expressed an opinion as to the identity of the person who shot him. In *S. v. Watkins,* 159 N. C., 480, language used by deceased in a statement admitted as a dying declaration, to wit: "Why did he shoot me? I have done nothing to be shot for," was held competent as a part of the dying declaration. It is said in the opinion by *Clark, C. J.:* "It was a statement of a fact. If it was doubtful, which it was, it should have been admitted, and the court should have been requested to instruct the jury to consider what the deceased meant as a matter affecting the weight

to be given to the statement. In *S. v. Mills,* 91 N. C., 594, the dying man stated that Eaton Mills had shot him. The witness asked, 'What for?' To which the deceased replied, 'Nothing.'" Defendant's exception to the admission of this testimony was not sustained.

In the instant case, the solicitor had announced to the jury that he would not contend that defendant was guilty of murder in the first degree; that he would contend that defendant was guilty of murder in the second degree. The jury by their verdict, found that defendant was not guilty of murder in the second degree, but was guilty of manslaughter. Conceding that it was error to submit the statement of the deceased that the cause of the homicide was an old grudge between defendant and deceased, as evidence upon the issue as to whether the homicide was murder in the second degree, or not, in view of the verdict of the jury that defendant did not kill deceased with malice, it must be held that it was not reversible error, for the court to refuse to strike out the statement upon defendant's motion. Upon the issue involving the charge of manslaughter, the existence of an old grudge was not material to the finding by the jury that defendant was guilty of manslaughter. Defendant testified that he had at one time been angry with deceased, because of a misunderstanding, but that at the time of the shooting he had no ill-will toward deceased. The refusal of the court to permit defendant to testify as to the facts in regard to the misunderstanding between him and the deceased was not reversible error, in view of the verdict rendered by the jury.

The remaining assignments of error have been carefully considered; they cannot be sustained. There was ample evidence, to which there were no objections, to sustain the verdict. Defendant's testimony in support of his contention that he fired at deceased in self-defense was contradicted by evidence for the State. All the evidence was submitted to the jury under a charge by the court which was free from error. The judgment is affirmed. There is

No error.